IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Kinsale Insurance Company,<br><br>      Plaintiff,<br><br>v.<br><br>NextGen VPR, LLC d/b/a Vivo Port Royal, Elmington Property Management, LLC, and Winter Vickery, Individually and as Personal Representative of the Estate of Deborah Vickery<br><br>      Defendants, | C/A No.  9:26-cv-01321-DCN<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT (NON-JURY)** |

Kinsale Insurance Company ("Kinsale") brings this declaratory action against NextGen VPR, LLC d/b/a Vivo Port Royal ("NextGen VPR"), Elmington Property Management, LLC, ("EPM") and Winter Vickery, Individually and as Personal Representative of the Estate of Deborah Vickery, and alleges as follows:

**NATURE OF ACTION**

1.      This is an action for declaratory relief under 28 U.S.C. § 2201. At issue is whether Kinsale's primary and excess insurance policies provide coverage for a lawsuit arising from burn injuries Deborah Vickery ("Decedent") allegedly sustained while taking a bath in an apartment in Port Royal, South Carolina, an apartment building known as Vivo Port Royal. Kinsale seeks a declaration by this court that two endorsements exclude coverage—(1) the Exclusion – Water Related Bodily Injury and Property Damage ("Water-Related Exclusion") Endorsement, and (2) the Exclusion – Eviction and Failure to Maintain ("Failure to Maintain Exclusion") Endorsement—and that Kinsale has no duty to defend or indemnify Next Gen VPR or EPM for

1

the underlying lawsuit.

## JURISDICTION AND VENUE

2.     Jurisdiction is proper under 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.     As to the amount in controversy, Winter Vickery contends that the Decedent suffered burns on her body as a result of overly hot bath water, leading to her hospitalization, and, allegedly, causing or contributing to her death. Plaintiff seeks actual damages, including payment of medical bills for inpatient burn treatment, pain and suffering, and punitive damages. Winter Vickery has repeatedly issued settlement demands, which far exceed $75,000, to NextGen VPR and EPC.

4.     Venue is proper in this district because the policy affords coverage in connection with the property located in this district, the underlying lawsuit is in this district, and otherwise "a substantial part of the events … giving rise to the claim occurred" in this district.  *See* 28 U.S.C. § 1391(b)(2).

5.     All conditions precedent occurred, were performed, or were waived.

## THE PARTIES

6.     Kinsale is an Arkansas corporation with its principal place of business in Virginia.

7.     NextGen VPR is a Florida limited liability company with its principal place of business in Florida. On information and belief, and as set forth more fully in the Declaration of Counsel attached as **Exhibit A** and incorporated herein by reference, NextGen VPR's only member is Salvatore A. Tiano, a citizen of Florida.

8.     EPM is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee. On information and belief, and as set forth more fully in Exhibit A, EPM

has four or five members, all of whom are citizens of Tennessee. The members and possible members are identified in Exhibit A. None of EPM's members is a citizen of Arkansas or Virginia.

9.      EPM is named as a defendant in the underlying lawsuit and seeks coverage under the policies that NextGen VPR purchased from Kinsale. EPM has tendered its defense and indemnity to Kinsale as an Additional Insured under the Kinsale policies, pursuant to a property management agreement between EPM and NextGen VPR.

10.     At all relevant times, Deborah Vickery was a citizen of South Carolina and a resident of Beaufort County, South Carolina. She was domiciled in South Carolina at the time of her death. Her Estate proceedings are filed in Beaufort County, SC, Probate Court, case number 2025ES0701405.

11.     Winter Vickery  is a citizen of South Carolina and a resident of Beaufort County, South Carolina.

## FACTUAL BACKGROUND

12.     On May 22, 2025, Deobrah Vickery filed a Summons and Complaint against Vivo Living Port Royal, LLC, and EPM, in the Beaufort County, South Carolina, Court of Common Pleas, case no. 2025CP0701293 ("Underlying Lawsuit").

13.     Deborah Vickery later passed away and is hereafter referred to as "Decedent."

14.     The January 18, 2026, Second Amended Complaint ("SAC") is now the operative Complaint. A copy is attached hereto as **Exhibit B**.

15.     The Underlying Lawsuit alleges the Decedent suffered burn injuries on May 7, 2025, from overly heated bath water in her apartment at Vivo Port Royal, an apartment building at 1660 Ribault Road in Port Royal, South Carolina (the "Property").

16.     The SAC alleges "[i]n or about 2023, the Property was converted from a

3

motel/hotel to multifamily apartment use" and "[t]he conversion included renovation or installation of residential bathing fixtures (tubs/showers) and a centralized [domestic hot water] DHW system serving multiple dwelling units." (SAC, ¶ 10.)

17.    The SAC alleges NextGen VPR owned, controlled, or operated the Property on May 7, 2025. (SAC, ¶ 3.)

18.    The SAC further alleges that EPM "operated, managed, and maintained the Property, including centralized [mechanical, electrical, and plumbing] MEP systems and the DHW system supplying hot water to apartment units." (SAC, ¶ 5.)

19.    The SAC alleges that NextGen VPR and EPM "owned, controlled, designed, specified, constructed, inspected, managed, and/or maintained the Property and its building systems, including the centralized DHW system and bathing fixtures within apartments." (SAC, ¶ 12.)

20.    The SAC alleges: "The Property utilized a centralized DHW plant consisting of commercial, gas-fired water heaters, domestic hot water storage tank(s), and circulation pump(s), distributing hot water to dwelling units." (SAC, ¶ 13.)

21.    The SAC alleges that NextGen VPR and EPM "controlled the DHW system, including setpoints, operation, maintenance, and any master mixing/tempering devices or temperature-limiting devices that should have been installed either centrally or at points-of-use, and were responsible for MEP systems serving the entire Property." (SAC, ¶ 16.)

22.    The SAC alleges that Decedent's "bathtub fixture lacked adequate point-of-use temperature-limiting or anti-scald protection, and the central DHW system lacked a properly installed and set master thermostatic mixing/tempering valve controlling safe distribution temperatures to residential fixtures, or such device(s) were not maintained, calibrated, or

4

functioning." (SAC, ¶ 18.)

23.     The SAC alleges that NextGen VPR and EPM "owed a duty to exercise reasonable care in owning, operating, designing, constructing, inspecting, and maintaining the Property's DHW systems and bathing fixtures, including preventing excessively hot water from reaching tubs/showers in residential units." (SAC, ¶ 24.)

24.     The SAC alleges that NextGen VPR and EPM allegedly "breached their duties by failing to design, specify, install, verify, test, maintain, and warn regarding thermostatic mixing/tempering devices and safe hot water delivery temperatures; by operating and/or allowing DHW distribution at approximately 141° at a bathtub; by failing to include point-of-use anti-scald protection; and by failing to warn residents." (SAC, ¶ 25.)

25.     The SAC alleges that NextGen VPR and EPM "knew or, with the exercise of reasonable care, should have known of the dangerous condition based on their exclusive control over the centralized DHW system, their knowledge of the hotel-to-apartment conversion and residential bathing use, and their responsibility for MEP systems serving all units." (SAC, ¶ 30.)

26.     The SAC alleges: "Applicable statutes, regulations, and/or building/plumbing codes required that domestic hot water to residential bathing fixtures be tempered/limited to safe maximum delivery temperatures and/or required installation and maintenance of thermostatic mixing valves and/or ASSE-compliant temperature-limiting devices." (SAC, ¶ 40.)

27.     The SAC alleges that NextGen VPR and EPM "violated these requirements by delivering dangerously hot water (approximately 141° F) to a residential bathtub and by failing to install, verify, set, or maintain appropriate temperature controls and anti-scald protection." (SAC, ¶ 41.)

28.     The SAC alleges that Next Gen and EPM "leased residential premises to Decedent

with an implied warranty of habitability and fitness for residential purposes, including safe hot water delivery for bathing." (SAC, ¶ 45.)

29.    The SAC alleges that NextGen VPR and EPM "breached the implied warranty by failing to provide safe, code-compliant DHW temperature control and anti-scald protection and by failing to warn." (SAC, ¶ 47.)

30.    The SAC alleges that NextGen VPR and EPM "hired, retained, and/or supervised contractors, design professionals, maintenance personnel, and consultants – including Dunbar [Construction Company, Inc.[1]], plumbing/mechanical subcontractors, and AEI [Consultants, Inc.[2]] – to design, install, inspect, operate, and maintain the DHW system and bathing fixtures." (SAC, ¶ 50.)

31.    The SAC alleges that NextGen VPR and EPM "knew or should have known that the hotel-to-apartment conversion required code-compliant scald protection and safe DHW distribution temperatures in residential units, and that incompetent performance posed severe scald hazards." (SAC, ¶ 51.)

32.    The SAC alleges that NextGen VPR and EPM allegedly "failed to exercise reasonable care in hiring, training, instructing, supervising, and retaining those responsible for DHW safety and inspection, including ensuring competency regarding mixing/tempering and maximum delivery temperatures and adherence to applicable codes and standards." (SAC, ¶ 52.)

---

[1]    The SAC alleges that Dunbar was the business entity that was the general contractor or contractor of record for the Project's conversion. (SAC, ¶ 6.)

[2]    The SAC alleges that AEI was retained to perform a property condition assessment for the Property before NextGen VPR bought the Property or before the prior owner began operations at the Property, with a focus on life-safety and MEP conditions. (SAC, ¶ 7.)

6

33.    The SAC alleges that NextGen VPR and EPM "failed to provide reasonable warnings to residents, including failing to: a. Post warnings regarding hot water temperature hazards; b. Provide written communications advising residents of elevated temperatures and scald risk; c. Implement interim protective measures such as lowering heater setpoints, installing temporary limiters, or restricting temperatures pending permanent corrections." (SAC, ¶ 56.)

34.    Kinsale is defending NextGen VPR and EPM pursuant to a reservation of rights.

**THE POLICY**

35.    NextGen VPR purchased a commercial general liability Policy No. 0100328112-0 from Kinsale, effective October 9, 2024, to October 9, 2025 (the "CGL Policy"). A copy of the CGL Policy, with the premium redacted, is attached as **Exhibit C**.

36.    NextGen VPR also purchased a commercial excess liability Policy No. 0100328124-0 from Kinsale, effective October 9, 2024, to October 9, 2025 (the "Excess Policy"). The Excess Policy follows the terms of the CGL Policy and is also subject to its own exclusions. A copy of the Excess Policy, with the premium redacted, is attached as **Exhibit D**.

37.    The CGL Policy contains a Water-Related Exclusion endorsement, Form CAS3086 1121, which provides in pertinent part:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> **EXCLUSION – WATER RELATED BODILY INJURY AND PROPERTY DAMAGE**
>
> **This endorsement modifies insurance provided under the following:**
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE**
>
> The following exclusion is added to this Policy:
>
> > This insurance does not apply to any claim or "suit" for "bodily injury" or "property damage" arising directly or indirectly out of, related to, or, in any way involving:

7

\* \* \*

(3)     Any actual or alleged failure to maintain a water heater or boiler including, without limitation, failure to maintain the temperature control of a water heater or boiler; or

\* \* \*

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

38.     The Excess Policy also contains a Water-Related Exclusion endorsement, Form

CAX3167 0122, which provides in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – WATER-RELATED BODILY INJURY AND PROPERTY DAMAGE**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL EXCESS LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any claim or suit for bodily injury, property damage or any other injury or damage arising directly or indirectly out of, related to, or, in any way involving:

\* \* \*

c.     Any actual or alleged failure to maintain a water heater or boiler including, without limitation, failure to maintain the temperature control of a water heater or boiler; or

\* \* \*

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

39.     The CGL Policy contains a Failure to Maintain Exclusion endorsement, Form

CAS3103 0718, which provides in pertinent part:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSIONS – EVICTION AND FAILURE TO MAINTAIN**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE**

**A.**      The following exclusions are added to this policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving:

      1.      Violation of any law, local order or directive involving any duty to:

            a.      Maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition; or

                            \*   \*   \*

      3.      Breach of any lease, rental agreement, contract, warranty or covenant, whether written or oral, involving any duty to maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition.

                            \*   \*   \*

**B.**      The exclusions set forth in this endorsement shall apply:

      a.      Whether the insured may be liable as an owner, landlord, tenant, operator or property manager or in any other capacity; and

      b.      To any obligation to pay any attorneys' fees or costs, or share damages with, indemnify or repay someone else who must pay damages because of "bodily injury", "property damage" or "personal and advertising injury" arising out of items 1. through 6. above; and

      c.      To the negligent hiring, employment, training, monitoring, supervision, or retention of any employee or agent of any insured with respect to items 1. through 6. above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

40.      The Excess Policy contains a Failure to Maintain Exclusion endorsement, Form

CAS3103 0718, which provides in pertinent part:

9

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSIONS – EVICTION AND FAILURE TO MAINTAIN**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL EXCESS LIABILITY COVERAGE**

**A.**     The following exclusions are added to this policy:

This insurance does not apply to any claim or suit arising directly or indirectly out of, related to, or, in any way involving:

1.     Violation of any law, local order or directive involving any duty to:

    a.     Maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition; or

* * *

3.     Breach of any lease, rental agreement, contract, warranty or covenant, whether written or oral, involving any duty to maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition.

* * *

**B.**     The exclusions set forth in this endorsement shall apply:

    a.     Whether the insured may be liable as an owner, landlord, tenant, operator or property manager or in any other capacity; and

    b.     To any obligation to pay any attorneys' fees or costs or share damages with, indemnify or repay someone else who must pay damages because of bodily injury, property damage, personal and advertising injury, or any other injury or damage arising out of items 1. through 6. above; and

    c.     To the negligent hiring, employment, training, monitoring, supervision, or retention of any employee or agent of any insured with respect to items 1. through 6. above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

41.     The CGL Policy also contains an Additional Policy Exclusions endorsement, Form

CAS3043-0621, which provides in pertinent part:

10

\* \* \*

**DUTY TO DEFEND EXCLUSION**

Where there is no coverage under this Policy, there is no duty to defend.

\* \* \*

**COUNT I –NO COVERAGE UNDER
THE WATER-RELATED EXCLUSION**

42. Kinsale incorporates Paragraphs 1 through 41.

43. The claims in the SAC arise directly or indirectly out of, are related to, or involve the alleged failure to maintain a water heater or boiler, including, without limitation, the failure to maintain the temperature control of a water heater or boiler.

44. Accordingly, Kinsale has no duty to defend or indemnify NextGen VPR or EPM against the Underlying Lawsuit based on the Water-Related Exclusion and the Duty to Defend Exclusion.

**COUNT II –NO COVERAGE UNDER
THE FAILURE TO MAINTAIN EXCLUSION**

45. Kinsale incorporates Paragraphs 1 through 44.

46. The claims in the SAC arise directly or indirectly out of, are related to, or involve the violation of a law, local order, or directive involving the duty to maintain the apartment in a safe, healthy, habitable, or tenantable condition.

47. The claims in the SAC arise directly or indirectly of a breach of a lease, rental agreement, contract, warranty or covenant, written or oral, involving any duty to maintain any room, dwelling or premises in a safe, sanitary, healthy, habitable or tenantable condition

48. Accordingly, Kinsale has no duty to defend or indemnify NextGen VPR or EPM against the underlying lawsuit based on the Failure to Maintain Exclusion and the Duty to Defend Exclusion.

11

## REQUESTED RELIEF

Kinsale respectfully requests this Court:

a.      Declare that NextGen VPR and EPM are not entitled to coverage for defense against the Underlying Lawsuit because the CGL Policy's Water-Related Exclusion and Failure to Maintain Exclusion apply to bar coverage, in tandem with the Duty to Defend Exclusion;

b.      Declare that NextGen VPR and EPM are not entitled to coverage for defense against the Underlying Lawsuit because the Excess Policy's Water-Related Exclusion and Failure to Maintain Exclusion apply to bar coverage;

c.      Declare that Kinsale is relieved of any obligation to continue defending NextGen VPR and EPM for the claims asserted against them in the SAC filed in the Underlying Lawsuit and may therefore withdraw its defense; and

d.      Award Kinsale all costs it incurred to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

TEAGUE CAMPBELL DENNIS & GORHAM, LLP

BY:      */s/ Peter H. Dworjanyn*
         Peter H. Dworjanyn
         Federal Bar 6289
         1901 Main Street
         18th Floor – 3032
         Columbia, SC 29201
         pdworjanyn@teaguecampbell.com
         *Attorney for Plaintiff Kinsale Insurance Company*

March 27, 2026
Columbia, South Carolina

12